IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 05-467-01 |
| JAMES CARSTARPHEN | : | |

GOVERNMENT'S OMNIBUS RESPONSE
TO PRETRIAL MOTIONS FILED BY DEFENDANT JAMES CARSTARPHEN

The United States of America, by and through its counsel, Patrick L. Meehan,

United States Attorney for the Eastern District of Pennsylvania, and Anthony J. Wzorek,

Assistant United States Attorney for the same district, hereby responds to the following pre-trial

motions filed by defendant James Carstarphen: (1) Motion to Compel Discovery and Production

of Exculpatory Evidence; (2) Motion for a Bifurcated Trial; (3) Motion to Suppress Out of Court

Identification; (4) Motion in Limine to Exclude Evidence of Prior Convictions Pursuant to

Federal Rule of Evidence 609.

I.      PROCEDURAL BACKGROUND

A federal grand jury returned an indictment on August 18, 2005, charging James

and Ronald Carstarphen with conspiracy, in violation of 18 U.S.C. § 371; armed carjacking, in

violation of 18 U.S.C. § 2119; kidnaping, in violation of 18 U.S.C. § 1201; and carrying, and

aiding and abetting the carrying of, a firearm during and in relation to a crime of violence, in

violation of 18 U.S.C. § 924(c)(1).  James Carstarphen also was charged with being a felon in

possession, in violation of 18 U.S.C. § 922(g)(1).  These charges arose out of the gunpoint

abduction of a woman and her automobile from Philadelphia, Pennsylvania to Camden, New

Jersey on July 16, 2005.  On January 13, 2006, Ronald Carstarphen pled guilty to the above

charges.  James Carstarphen awaits trial.

## II.  FACTUAL BACKGROUND

On July 16, 2005, at approximately 11:30 p.m., Kara Crombie had just parked her

1995 Audi in the 900 block of North Fifth Street, Philadelphia, PA, and was walking toward her

home when she was approached by an unknown black male, who she later identified as James

Carstarphen.  James Carstarphen put his arm around the victim, put a gun in her side, and stated,

"Don't scream, be cool, and turn around."  The victim was forced to get into the backseat of a

Ford Taurus driven by another unknown black male, later identified by Crombie as Ronald

Carstarphen.  James Carstarphen told the victim not to do anything stupid because he did not

want to have to kill her.  James Carstarphen took the victim's purse and gave it to Ronald

Carstarphen, who removed $60 from the purse along with the victim's identification, credit card,

and ATM card.  Ronald Carstarphen demanded her pin number for her ATM card, and the victim

provided him the number.

Ronald Carstarphen exited the car and got into the victim's vehicle and drove

away while James Carstarphen remained with the victim in the backseat of the Ford Taurus.

Approximately 15 to 20 minutes later, Ronald Carstarphen returned and told the victim that the

ATM card did not work, and that she did not have a savings account.  The victim stated that she

did not have a savings account, but she did have a checking account.  Ronald Carstarphen then

told everyone to get into the victim's car, and they drove to an ATM near 6th and Spring Garden

Streets in Philadelphia, PA.  Because there were too many people around this area, Ronald

Carstarphen stated that he had an idea, and asked the victim for directions to the Ben Franklin

Bridge.  The victim gave him the directions and they drove over the Ben Franklin Bridge to Camden, New Jersey.

Once in Camden, they drove to another ATM machine near a club, possibly on Broad Street.  Ronald Carstarphen got out of the car and attempted to access the victim's checking account, but he was unsuccessful.  Ronald Carstarphen told the victim to exit the vehicle and help him with the ATM card.  The victim tried to remove money from her account, but she was not able to remove any money.  The victim was put back into her car and all three drove approximately two blocks where they got stuck in a traffic jam.  Camden Police officers were directing traffic in the area.  Both males told the victim not to look at the officer, be cool, and to look down.  As they started to turn, the victim jumped out of the car, as it was traveling approximately 10 miles per hour.  The victim alerted the police that the males in the car had a gun.  The police chased after the victim's vehicle, which was occupied by James Carstarphen and Ronald Carstarphen.  Officers Godlewski and Concepcion apprehended both males trying to flee the victim's vehicle.  Officer Williams processed the victim's vehicle as a crime scene, and recovered a .38 caliber handgun, loaded with five live rounds, from the rear seat.   A short time later, the victim was taken to a nearby McDonald's restaurant where her car was parked.  The victim observed the two males, James Carstarphen and Ronald Carstarphen, in police custody, and she positively identified them as the individuals that had kidnaped her.

## III.     RESPONSE TO DEFENDANT'S MOTIONS

a.      Motion to Compel Discovery and Production of Exculpatory Evidence

          The government has provided extensive discovery materials to defense counsel. In addition, the government has produced, in advance of trial, all <u>Jencks</u> materials, including grand jury transcripts and agents' reports of interviews.

          The government has turned over all <u>Brady</u> and <u>Giglio</u> materials in its possession to the defendant and recognizes its continuing obligation to make any additional materials available to the defendant.  Specifically, in relation to the defendant's specific requests:

          1.      The government is not aware of any statements of the defendant to anyone which tend in any way to exculpate him;

          2.      The government is not aware of any witnesses who have information tending in any way to exculpate the defendant;

          3.      The government is not aware of any exculpatory evidence derived from any statements of the defendant or co-defendant;

          4.      The government already has turned over all evidence from surveillances and searches and seizures.  The government is not aware of any other searches;

          5.      The government already has turned over all statements of any witnesses, including voluntarily turning over all <u>Jencks</u> material months before trial;

          6.      The government already has turned over the names and addresses of government witnesses;

          7.      The government is unaware of any criminal record relating to its witnesses;

8.    The government is unaware of any benefits, threats, or promises made to any of its witnesses other than the guilty plea agreement of Ronald Carstarphen already provided to defense counsel;

9.    The government is unaware of any information indicating that any government witness is the subject of a criminal investigation or facing charges of criminal activity; any open cases of cooperating co-defendant Ronald Carstarphen are contained in the criminal extract already provided to the defense;

10.    The government is not aware of any information that any potential government witnesses have ever testified untruthfully or made any false statements to government agents;

11.    The government is not aware of any statements or documents made by potential government witnesses which the government knows to be false;

12.    The government is unaware of any persons obtaining benefits for any person whom the government considers a potential witness;

13.    The government has no evidence that it will be presenting under Federal Rule of Evidence 404(b);

14.    The government has turned over all documents, phone records, reports, and tangible objects currently in its possession, and will continue to make any such exhibits available to the defendant;

15.    The government is unaware of any canine detection reports;

16.    The government is unaware of any photo arrays being used in this case;

17.     The government does not intend to use any formal written statements of any co-conspirators at trial; the victim will testify to the statements made by the co-defendants during the commission of the crime, as reflected in the discovery already provided; additionally, Ronald Carstarphen will testify at trial against James Carstarphen.

18.     Because there are no informants in this case, as contemplated by Rovario, the government has none of the items requested by the defendant for informants under 18(a) through 18(m).

19.     The government is unaware of any statements, written or oral, which tend to exculpate the defendant.

20.     The government has turned over all statements of all witnesses.

WHEREFORE, the government respectfully requests that the defendant's motion to compel discovery and production of exculpatory evidence be DENIED as moot.

**b.     Motion in Limine to Exclude Evidence of Prior Convictions Pursuant to Federal Rule of Evidence 609**

The defendant acknowledges that he has a prior conviction for possession with intent to distribute a controlled substance.  In 2003, the defendant was sentenced for that felony offense to a county prison sentence.  The defendant moves to exclude this evidence, arguing that the prejudice to the defendant overrides its probative value.

Rule 609(a)(1) provides that "evidence that an accused has been convicted [of a felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused."  Those convictions for which a witness was released from custody more than 10 years before trial, however, are admissible only if the Court finds that "the probative value of the conviction supported by specific facts and

circumstances substantially outweighs its prejudicial effect." Rule 609(b). "[P]ermissible

questioning typically is limited to the number of convictions, and the nature, time, and date of

each. United States v. Faulk, 53 Fed.Appx. 644, 2002 WL 31667657 (3d Cir. 2002) (not

precedential), citing McCormick on Evidence, § 42 at 167 (5ᵗʰ ed., 1999). The trial court can

reserve making its final ruling on this issue until after the defendant testifies. See Ohler v.

United States, 529 U.S. 753, 758 n.3; Luce v. United States, 469 U.S. 38, 41- 42 (1984).

As the Third Circuit has explained, "Rule 609 is premised on 'the common sense

proposition that one who has transgressed society's norms by committing a felony is less likely

than most to be deterred from lying under oath.' ... Rule 609 evidence is admitted in order to

inform the jury about the character of the witnesses whose testimony the jury is asked to

believe." Walden v. Georgia Pacific Corp., 126 F.3d 506, 523 (3d Cir. 1997) (citations omitted).

See also United States v. Lipscomb, 702 F.2d 1049, 1061 (D.C. Cir. 1983) ("[A]ll felony

[convictions] have some probative value on the issue of credibility").

Indeed, juries routinely are instructed that a prior felony is appropriately

considered when assessing a witness' credibility, see Devitt and Blackmar § 15.08, on the

assumption that felony convictions are relevant. In this case, Carstarphen's felony conviction is

relevant to the jury's assessment of his credibility, if he takes the stand in his own defense, and

therefore should be admissible for impeachment purposes.

A.      Carstarphen's conviction is admissible under Rule 609(a)(1).

The Third Circuit has set forth four basic factors to be considered in balancing the

probative value and prejudicial effect when applying Rule 609(a)(1): "(1) the kind of crime

involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the

case; [and] (4) the importance of the credibility of the defendant."   Government of the Virgin

Islands v. Bedford, 671 F.2d 758, 761, n.4 (3d Cir.1982); see also United States v. Mahone, 537

F.2d 922, 929 (7th Cir. 1975) (citing 3 J. Weinstein, Evidence ¶ 609 [03] at 609-78 to 609-75).

Accordingly, evidence that may have been inadmissible under Rule 404(b) is nevertheless

admissible under Rule 609 because a testifying defendant's credibility is the central issue.  See

United States v. Haslie, 160 F.3d 649 (10th Cir. 1998); United States v. Valencia, 61 F.3d 616

(8th Cir. 1996); United States v. Smith, 49 F.3d 475 (8th Cir. 1995).  Here, these factors support

admission of Carstarphen's prior conviction, should he testify.

> 1.      The Kind of Crime Involved

Pursuant to Rule 609(a)(1), many courts have upheld the admission of non-crimen

falsi felonies such as Carstarphen's conviction here, as discussed below.

> (a) Drug Conviction

As to defendant's drug conviction, courts repeatedly have found that a drug

distribution conviction, such as the defendant's, is probative of a defendant's character for

truthfulness and, therefore, is properly admitted under Rule 609(a)(1) to impeach a defendant.

As the Second Circuit has reasoned:

> Prime among [the factors to be considered under Rule 609(a)] is whether the crime, by its nature, is probative of a lack of veracity. . . .  Here, the District Judge in his discretion was entitled to recognize that a narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie. From this he could rationally conclude that such activity in a witness' past is probative on the issue of credibility.

United States v. Ortiz, 553 F.2d 782, 784 (2d Cir. 1977) (emphasis added).

The probative value of prior narcotics convictions has been deemed sufficient to outweigh their potential prejudice, even when admitted in a trial on new narcotics charges, which is <u>not</u> the case here.  <u>See, e.g.</u>, <u>United States v. Hernandez</u>, 106 F.3d 737, 739-40 (7th Cir. 1997) (prior convictions for possession of cocaine and marijuana admissible to impeach defendant in kidnaping prosecution, although kidnaping was drug-related); <u>United States v. Cordoba</u>, 104 F.3d 225, 229 (9th Cir. 1997) (prior conviction for possession with intent to distribute cocaine admissible for impeachment under Rule 609 in drug case); <u>Borrome</u>, 1997 WL 786436 at *3 (allowing government to use prior drug convictions to impeach defendant in drug case); <u>United States v. Harris</u>, 959 F.2d 242, 1992 WL 72868 (9th Cir. 1992) (unpublished)  (in prosecution for distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), district court properly permitted government to introduce evidence of defendant's prior conviction for cocaine possession under Rule 609(a)(1), as "[t]he government had a right to present evidence which challenged [defendant's] trustworthiness as a witness.").

2.      <u>When the Conviction Occurred</u>

Carstarphen's 2003 conviction is within the last ten years, and his release from custody on this conviction is even more recent.  As such, this prior conviction is not so remote in time as to create unfair prejudice to Carstarphen.

3.      <u>The Importance of the Witness' Testimony to the Case</u>

Should he choose to testify, Carstarphen's testimony will become of central importance to this case and to any defense that he may offer at trial.  Carstarphen's account of the purported "facts," denials of participation in any criminal activity or wrongdoing, and any exculpatory explanations for the events of that day are obviously of great significance.  "A

defendant who testifies is invariably the centerpiece of any criminal defense, and the defendant's

credibility is always at issue." United States v. Rosato, 1999 WL 58577, *2 (E.D. Pa. 1999).

4.      The Importance of the Credibility of the Defendant

In the upcoming trial, the most important issue will be the credibility of the

witnesses, including the cooperating co-defendant, who undoubtedly will be questioned about his

felony convictions.  When a defendant testifies, he places his credibility "directly at issue," see

United States v. Beros, 833 F.2d 455,  463-64 (3d Cir. 1987), and his prior conviction then bears

on his credibility.  See United States v. Alexander, 48 F.3d 1477, 1489 (9th Cir. 1995).

Under these circumstances, it is not fair to allow James Carstarphen, if he chooses

to testify, to hide from the jury the prior felony which casts doubt on his version of the facts.  See

Oakes, 565 F.2d at 173 (impeachment appropriate where there was a "sharp, irreconcilable

conflict" between the testimony of the government's witnesses and that of the defendant, so that

credibility was crucial).  As the Ninth Circuit recognized in Browne, 829 F.2d at 763, the

government should not be forced to "sit silently by, looking at a criminal record which, if made

known, would give the jury a more comprehensive view of the trustworthiness of the defendant

as a witness."  The jury is entitled to know of the prior conviction in assessing James

Carstarphen's credibility, should he choose to testify.[1]

---

[1]  "Evidence of a prior conviction can be admitted under Rule 609(a)(1) solely for the
purposes of attacking credibility." Government of the Virgin Islands v. Bedford, 671 F.2d 758,
761 (3d Cir.1982). See, e.g., United States v. Johnson, 302 F.3d 139,151-152 (3d Cir. 2002)
(district court properly permitted government to impeach credibility of defendant Johnson and
defense witness Robertson by asking each on cross-examination about their prior felony
convictions; Third Circuit explains that "Credibility was a major issue at trial because Johnson's
defense depended on the jury believing his story rather than Sey's, and evidence of a felony
conviction is probative of credibility. ...[And, we] fail to see how the fact of Robertson's prior
convictions might have inflicted unfair prejudice beyond that which ordinarily accompanies
evidence introduced pursuant to Rule 609(a)(1)."); United States v. Smith, 131 F.3d 685 (7th Cir.
1997) (where defendant's testimony directly contradicts other witness's credibility on essential

   B.  <u>The Court can give a limiting instruction to avoid any unfair prejudice.</u>

   The Court can minimize any potential prejudice to the defendant by instructing the jury that this prior conviction can only be used to evaluate his credibility.  Jurors are presumed to follow such limiting instructions.  <u>Shannon v. United States</u>, 512 U.S. 573 (1994).

   WHEREFORE, the defendant's motion in limine to exclude evidence of prior convictions pursuant to Federal Rule of Evidence 609 should be DENIED.

**c.  <u>Motion to Suppress Out-of-Court Identification</u>**

   The defendant argues that there was no reasonable suspicion or probable cause to stop and detain him, and therefore his post-incident identification must be suppressed.  He further argues that any in-court identification would be impermissibly suggestive and therefore should not be allowed.

   The defendant is wrong.  Camden County Police stopped the car of the victim only after she jumped out of the moving car, screamed to the officers that the defendants had a gun, and the defendants sped away.  The officers clearly had reasonable suspicion to stop the victim's car within minutes of receiving this information.  That information was only further confirmed when the two defendants attempted to flee on foot from the car.

   "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000). Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Id. at 123. Elaborating on this point, the Supreme Court has

---

issue, prior criminal convictions are admissible for impeachment purposes).

said, "Reasonable suspicion is a less demanding standard than probable cause not only in the

sense that reasonable suspicion can be established with information that is different in quantity or

content than that required to establish probable cause, but also in the sense that reasonable

suspicion can arise from information that is less reliable than that required to show probable

cause."  Alabama v. White, 496 U.S. 325, 330 (1990).

   The Supreme Court has recognized that nervous, evasive behavior is a pertinent

factor in determining reasonable suspicion.  United States v. Brignoni--Ponce, 422 U.S. 873, 885

(1975); Florida v. Rodriguez, 469 U.S. 1, 6 (1984) (per curiam); United States v. Sokolow, 490

U.S. 1, 8-9 (1989).  Cf., Illinois v. Wardlow, 120 S. Ct. 673, 676 (2000)(unprovoked headlong

flight may justify stop).   Under all the circumstances in this case, the police acted reasonably in

stopping the victim's car.

   As to the identification of the defendant, the victim was in the presence of the

defendants for a considerable period of time from the time that they forced her into their car as

they drove around Philadelphia and into Camden in a futile attempt to access her bank card. She

had ample opportunity to view the defendants during this time, thereby negating influence of

suggestivity in her on-scene identification.

    Contrary to the defendant's suggestion, the identification procedure in this case

was entirely proper.  The test for an identification procedure's validity depends on its  reliability.

See, e. g., Manson v. Brathwaite, 432 U.S.98, 112-14 (1977); id. at 114 ("reliability is the

linchpin in determining the admissibility of identification testimony"); see also Watkins v.

Sowders, 449 U.S. 341, 347 (1981) ("It is the reliability of identification evidence that primarily

determines its admissibility... ."). Identification evidence is admissible if the procedures were not

suggestive or if the identification has independent reliability. See, e. g., Manson v. Brathwaite,

432 U.S. at 114; Neil v. Biggers, 409 U.S.188, 199 (1972); see also United States v. Emanuele,

51 F.3d 1123, 1128 (3d Cir. 1995) ("A suggestive and unnecessary identification procedure does

not violate due process so long as the identification possesses sufficient aspects of reliability, for

reliability is the linchpin in determining the admissibility of identification testimony.") (internal

quotation marks omitted).

        Whether an identification procedure is reliable depends on the totality of  the

circumstances. See Biggers, 409 U.S. at 199.  These circumstances may include the witness'

original opportunity to observe a defendant and the degree of attention during that observation;

the accuracy of the initial description; the witness' degree of certainty when viewing a defendant

or his image; and the length of time between the crime and the identification procedure. Biggers,

409 U.S. at 200-01 (show-up identification of rape suspect by victim seven months after crime

admissible because there were several indicia of reliability, including victim's refusal to identify

other suspects in show-ups).

        Show-up identification procedures have repeatedly been found constitutional,

justified by "the fact that the eye-witnesses might have quickly departed, and the considerations

of reliability inhering in an immediate identification." United States v. Gaines, 450 F.2d 186, 197

(3d Cir. 1971); see also United States v. Funches, 84 F.3d 249, 254 (7th Cir. 1996); United States

v. Watson, 76 F.3d 4, 6 (1st Cir. 1996); Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987).

As the Ninth Circuit explained, "show-ups are not objectionable unless the procedure was so

impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

misidentification." United States v. Kessler, 692 F.2d 584, 585 (9th Cir. 1982).

Even if the identification procedure in this case was impermissibly suggestive, there were ample indicia of independent reliability here. In this case, the factors set forth in Biggers weigh heavily in favor of reliability. The eyewitness was in close contact with the defendant during the course of the carjacking and kidnaping and had ample opportunity to observe the defendant's face during this period of time.  Additionally, within minutes of the incident, the eyewitness was taken to the location where the defendant was being held by police and, without any hesitation, positively identified the defendant. In light of this evidence, the identification was independently reliable.[2]

WHEREFORE the defendant's motion to suppress the out-of-court identification should be DENIED.

---

[2]    The reliability of the witness' identification will be confirmed by the cooperating co-defendant.

**d.**      **<u>Motion for a Bifurcated Trial</u>**

   The government does not oppose the motion to bifurcate the trial and allow the

evidence of a prior conviction to be presented separately from the evidence showing that the

defendant possessed a firearm.

   WHEREFORE, the defendant's motion to bifurcate the trial should be

GRANTED.

            Respectfully submitted,

            PATRICK L. MEEHAN
            United States Attorney


            _____
            DAVID B. WEBB
            Assistant United States Attorney
            Chief, Violent Crimes


            _____
            ANTHONY J. WZOREK
            Assistant United States Attorney

<u>CERTIFICATION</u>

I certify that the government's omnibus response to pretrial motions filed by defendant James Carstarphen has been electronically filed and is available for viewing and downloading from the ECF system.  In addition, a true and correct copy of the government's omnibus response has been sent by first class mail to:

Benjamin Brait Cooper, Esq.
Federal Defender Association
609 Hamilton Mall
Sovereign Building, Suite 301
Allentown, PA 18101


ANTHONY J. WZOREK
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street; Suite 1250
Philadelphia, PA 19106-4476
(215) 861-8469
State Bar ID # 32639


DATE: _____